NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| MADELINE HERRERA, individually and on behalf of all others similarly situated, | : : : : | **Civil Action No. 21-11628-ES-AME**  **OPINION and ORDER** |
| Plaintiff, | : : : | |
| v. | : : | |
| GOYA FOODS, INC. and A.N.E. SERVICES, INC., | : : : : | |
| Defendants. | : : | |

**ESPINOSA**, Magistrate Judge

This matter comes before the Court on the plaintiff's motion for leave to file an amended complaint, pursuant to Federal Rule of Civil Procedure 15(a), to add a claim under the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. § 10:5-21 *et seq*. [ECF 33]. Defendants oppose the motion. The Court has considered the written submissions and, in its discretion, rules without oral argument. *See* Fed. R. Civ. P. 78. For the following reasons, the motion is granted.

**I.   BACKGROUND**

**A.   Factual Allegations**

Plaintiff Madeline Herrera ("Plaintiff") filed this putative class action in the Superior Court of New Jersey, Essex County, on or about May 13, 2021, seeking relief for the alleged failure to receive appropriate compensation in connection with her work as a sales representative for Defendants Goya Foods, Inc. ("Goya Foods") and A.N.E. Services, Inc. ("ANE")

1

(collectively "Defendants"). Plaintiff is domiciled in Connecticut, and Defendants are both Delaware corporations with their principal place of business in Jersey City, New Jersey. Defendants removed the action to this Court on May 21, 2021, on the basis of diversity jurisdiction, 28 U.S.C. § 1332(a).[1]

The Complaint states that from approximately 2010 to June 2020, Plaintiff worked selling Goya Foods products to businesses and facilities under a "Broker Agreement" she entered into with ANE.[2] (Compl. ¶ 3.) The Broker Agreement, which referred to Plaintiff as a "sales broker," established the terms of Plaintiff's sales work for Defendants, including her compensation and the geographic area of her sales route. (*Id.* ¶¶ 12-13, 29, 32.) Plaintiff operated a sales route for customers located in Connecticut. (*Id.* ¶ 3.)

The Complaint alleges that Defendants misclassified Plaintiff as an independent contractor, even though she was functionally acting as their employee "under the Connecticut employment relationship test." (*Id.* ¶ 15.) It further alleges Defendants deprived her of the protections of Connecticut's wage payment laws. (*Id.* 16.) In particular, the Complaint avers that Defendants violated the wage laws by making impermissible deductions from Plaintiff's compensation. (*Id.* ¶¶ 32-37.)

Plaintiff also claims Defendants breached the Broker Agreement by terminating her employment at time when she was on medical leave. (*Id.* ¶ 41.) According to the Complaint,

---

[1] The Notice of Removal stated Defendants had not yet been served at the time the case was removed and therefore removal was not barred under the "forum-defendant rule" of 28 U.S.C. § 1441(b)(2). *See Encompass Ins. Co. v. Stone Mansion Rest. Inc.*, 902 F.3d 147 (3d Cir. 2019) (holding removal by an in-state defendant is not precluded under Section 1441(b)(2) where that defendant removes before it has been "properly joined and served.").
[2] According to the Complaint, ANE is the agent and/or alter ego of Goya Foods "and exists for the sole purpose of providing another corporate intermediary in an effort by Goya to attempt to avoid the requirements of state and federal wage and worker protection laws." (Compl. ¶¶ 5-6.)

2

Plaintiff took medical leave in January 2020 to undergo treatment for endometriosis, substantiating her need for the leave of absence with documentation. (*Id.* ¶ 38.) However, the Complaint alleges Defendants located photos, on social media, suggesting Plaintiff was on vacation and accused her of providing false information and misusing her leave. (*Id.* ¶ 40-41.) It further alleges that, although Plaintiff clarified the photos were from the previous year, Defendants nevertheless determined Plaintiff had violated the Broker Agreement's provision that she use her "best efforts" to fulfill her obligations. (*Id.* ¶ 41.) The Complaint states Plaintiff was terminated on June 12, 2020. (*Id.*)

Based on the foregoing allegations, the Complaint asserts two causes of action: (1) a claim for violation of the Connecticut Wage and Hour Laws, Conn. Gen. Stat. Ann. § 31-58 *et seq.* and (2) a claim for breach of contract. Plaintiff brings the Connecticut statutory claim on behalf of herself and a putative class consisting of "all persons who worked, on a full-time basis, for Defendants in the State of Connecticut during the Class period, as sales representatives and signed a Broker Agreement, directly or on behalf of a business entity (the "Proposed Class")." (*Id.* ¶ 42.)

### B. Procedural History

On July 15, 2021, the Court convened an initial conference in this action, pursuant to Federal Rule of Civil Procedure 16. The Pretrial Scheduling Order required motions to amend the pleadings to be filed no later than September 17, 2021 and set a fact discovery deadline of January 21, 2022. After holding a further status conference, the Court extended the period for fact discovery to March 7, 2022.

At the parties' request and upon their representation that private negotiations were underway, the Court conducted a settlement conference, on June 7, 2022. However, the parties failed to reach a negotiated resolution of their claims during that conference. On June 9, 2022, the Court entered an order directing the parties to file a joint schedule proposing updated deadlines for the completion of any remaining discovery. A schedule was not submitted.[3]

Instead, days later, on June 12, 2022, Plaintiff filed a letter seeking leave to file a motion to amend the Complaint and attaching a proposed Amended Complaint. Plaintiff requested that the Court deem the June 12 submission her motion. The Court recognized the submission as Plaintiff's motion to amend, without expressing any view on the merits thereof.

The proposed Amended Complaint seeks to add a claim for violation of the NJLAD, alleging that Plaintiff's termination by Defendants discriminated against her on the basis of her medical disability.

## II. DISCUSSION

### A. Legal Standards

Motions for leave to amend pleadings are generally governed by liberal standard of Federal Rule of Civil Procedure 15(a)(2), which provides that "[t]he court should freely give leave [to amend a pleading] when justice so requires." Fed. R. Civ. P. 15(a)(2). However, when a motion is filed after the deadline set by court order, it is subject not only to Rule 15(a)(2) but also to the more stringent standard of Federal Rule of Civil Procedure 16(b)(4). Under Rule 16(b)(4), a party must demonstrate there is "good cause" to modify the Court's scheduling order and that

---

[3] The fact discovery period will require another extension, but at the parties' request, a new deadline has been held in abeyance pending the outcome of this motion.

she has acted with reasonable diligence despite the failure to comply with the order. *See* Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."). "Rule 16(b)(4) focuses on the moving party's burden to show due diligence." *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 84 (3d Cir. 2010). If good cause and diligence are demonstrated, the court then proceeds to analyze whether leave to amend is warranted, pursuant to Rule 15(a)(2).

### B. Good Cause under Rule 16(b)(4)

Plaintiff argues there is good cause to permit this motion, though filed after the September 17, 2021 deadline set in the Pretrial Scheduling Order, because facts indicating Defendants may have violated the NJLAD were not discovered until the first half of 2022. Plaintiff states the information was revealed during depositions in two separate but similar misclassification lawsuits brought by other Goya sales brokers for alleged wage and hour violations.[4] In those actions, Kenneth Milstrey, Goya's designee pursuant to Federal Rule of Civil Procedure 30(b)(6), testified, in relevant part, as to Goya's procedures for termination.

As a basis for demonstrating she obtained new information relating to her NJLAD claim, Plaintiff asserts that in February 2022 and again in April 2022, Milstrey testified he typically provides a warning or opportunity to cure before issuing a non-curable breach notice to a broker. Plaintiff further asserts that upon learning that Milstrey, who also signed her letter of termination, did not follow his standard procedure in her situation or afford her the same

---

[4] There are currently two other putative class action lawsuits pending in this District against Goya Foods and A.N.E., which, like this case, allege Defendants misclassified sales brokers and deprived them of adequate compensation under the applicable wage and hour laws of the plaintiffs' respective home states. Those suits are *Ortiz v. Goya Foods, Inc., et al.*, Civil Action No. 19-19003, brought by a resident of Pennsylvania, and *Morel v. Goya Foods, Inc., et al.*, Civil Action No. 20-05551, brought by a resident of New York.

5

opportunity as is provided to other sales brokers, she realized she had been treated differently from others similarly situated. She contends this new information pertains directly to pretext, giving rise to the basis for her claim that she was terminated based on her medical condition. Plaintiff maintains she exercised diligence by promptly seeking leave to file this motion to add a claim under the NJLAD.

Defendants, in opposition, argue Plaintiff's motion should be denied for falling far short of Rule 16(b)(4)'s good cause standard. First, they maintain that Plaintiff cherry-picks portions of Milstrey's deposition testimony in a futile attempt to create the appearance of new information about the basis for her termination. Defendants point to the fact that Milstrey testified that Broker Agreements may also be terminated without first consulting with or providing notice to the broker (*see* Warden Decl. Ex. 1 at 146:11-16), thus contradicting Plaintiff's assertion that Milstrey revealed her termination was handled contrary to ordinary procedures. Second, Defendants argue that good cause for the late amendment is not established because the Milstrey testimony on which Plaintiff relies does not pertain, directly or indirectly, to any ostensible discriminatory basis for terminating Plaintiff's Broker Agreement. In other words, they contend his testimony provides no additional information about the reason for the termination than Plaintiff possessed when she received the termination letter in June 2020. Third, Defendants emphasize that, contrary to Plaintiff's claim of diligence in seeking to amend, she waited almost four months after Milstrey's February 2022 deposition to file this motion.

Although Plaintiff has brought this motion almost nine months after the deadline set in the Pretrial Scheduling Order, she makes a sufficient showing that information concerning the allegedly pretextual nature of her termination did not come to light until the Milstrey depositions.

These were conducted in similar, pending lawsuits many months after that deadline had expired. Plaintiff argues that upon assessing this information, she acted promptly to add the NJLAD claim for unlawfully discriminatory termination. While Plaintiff may have raised the possibility of bringing a motion to amend the Complaint sooner than June 2022, the Court cannot conclude that Plaintiff's conduct here was dilatory or lacked the requisite diligence required to meet the Rule 16(b)(4) standard. Rather, in the interest of assessing Plaintiff's merits arguments for leave to add an NJLAD claim to this action, the Court, in its discretion, excuses any untimeliness of this motion. Accordingly, the Court finds Plaintiff has demonstrated good cause pursuant to Rule 16(b)(4).

### C. Leave to Amend under Rule 15(a)(2)

While Rule 15(a)(2) provides that leave to amend must be freely given, it is equally well-established that courts retain discretion to deny leave for various equitable reasons including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and/or] futility of amendment…." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006) (citing *Foman*). In considering a motion for leave to amend, the Court must be guided by the Third Circuit's consistent recognition "that prejudice to the non-moving party is the 'touchstone for the denial of an amendment.'" *Arthur*, 434 F.3d at 204 (quoting *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993)).

Here, Defendants argue that leave to amend must be denied on grounds of undue delay, bad faith, and futility. Undue delay, as a basis for denying a motion for leave to amend, focuses

7

on whether the party seeking leave has inexplicably failed to take advantage of previous opportunities to amend, resulting in unfair burdens to the court and the opposing party. *Arthur*, 434 F.3d at 204. The question of bad faith requires the Court to focus on the litigant's reasons for not amending sooner. *Adams v. Gould, Inc.*, 739 F.2d 858, 868 (3d Cir. 1984). Futility, in the context of assessing a Rule 15 motion, "means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997); *see also In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1332 (3d Cir. 2002) (holding same). "In assessing futility, the district court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Burlington*, 114 F.3d at 1434; *see also Massarsky v. General Motors Corp.*, 706 F.2d 111, 125 (3d Cir.), *cert. denied*, 464 U.S. 937 (1983) (holding that a motion for leave to amend may be denied on grounds of futility when the amendment would not withstand a Rule 12(b)(6) motion to dismiss).

The Court begins its analysis with the futility argument, because the parties' principal disagreement concerns whether Plaintiff can seek relief under the NJLAD for her allegedly unlawful termination, notwithstanding the fact that she is a nonresident of New Jersey whose work for Defendants occurred exclusively in another state.

Whether an individual who did not work in New Jersey is entitled to assert the cause of action created by the NJLAD against a New Jersey employer remains unresolved by the state's Supreme Court. However, in *Calabotta v. Phibro Animal Health Corporation*, 460 N.J. Super. 38 (App. Div. 2019), the New Jersey Appellate Division concluded that a claim under the

NJLAD may be available to individuals who do not reside in New Jersey.[5] The Appellate Division examined the statute and its history and found the "[New Jersey] Legislature has expressed an intention to allow certain nonresident plaintiffs to receive the benefits and protections of the NJLAD. Such an intention about the NJLAD's breadth may be gleaned from both the words of the statute and the expansive policies that underpin it." *Calabotta*, 460 N.J. Super. at 60. *Calabotta* held that an out-of-state plaintiff may avail himself of an NJLAD claim if consistent with New Jersey's most significant relationship test for resolving conflicts of laws. *Id.* at 66-67. Several courts in this District have recognized *Calabotta*'s holding that "an out-of-state plaintiff may be entitled to assert a claim under the NJLAD if he or she can demonstrate that New Jersey has the most significant relationship to his or her claim." *Donovan v. W.R. Berkley Corp.*, 566 F. Supp. 3d. 224, 232 (D.N.J. 2021) (citing *Calabotta*, 460 N.J. Super. at 53-59); *see also Walters v. Safelite Fulfillment, Inc.*, No. 18-11111, 2021 WL 1712261, at *5 (D.N.J. April 30, 2021) (applying *Calabotta* to find NJLAD claim sufficiently pled at motion to dismiss stage but later, on summary judgment, finding that plaintiff could not maintain claim because Connecticut had the most significant relationship to the dispute), *appeal docketed*, No. 21-2054 (3d Cir. May 28, 2021); *Rampersad v. Dow Jones & Co., Inc.*, No. 19-11733, 2020 WL 529212, at *4 (D.N.J. Jan. 30, 2020) (denying motion to dismiss the out-of-state plaintiff's NJLAD claim, finding "a more developed factual record [was] necessary to determine whether the *Calabotta* choice-of-law principles justify applying the NJLAD to Plaintiff's claims.").

---

[5] When a state's Supreme Court has not answered a question of state law, the federal court for the district "can garner assistance from the decisions of the state's intermediate appellate courts in predicting how the state's high court would rule." *Mosley v. Wilson*, 102 F.3d 85, 92 (3d Cir. 1996).

Of these decisions, *Donovan* is most instructive for the Court's analysis here because it considered "how federal courts should apply *Calabotta* within the federal pleading regime." *Donovan*, 566 F. Supp. 3d at 232. *Donovan* held as follows:

> When balancing the concerns raised by *Calabotta* and applying the plausibility standard under Rule 12(b)(6), this Court holds that an out-of-state plaintiff must plausibly allege, prior to discovery, some facts to show that he or she is entitled, as a threshold matter, to the protection of the NJLAD. In other words, to survive a motion to dismiss under Rule 12(b)(6), an out-of-state plaintiff must allege that New Jersey has the most significant relationship to his claim . . . Importantly, however, the plaintiff need not allege chapter and verse of every choice-of-law factor, but rather, sufficient facts for the court to determine, at the dismissal stage, that the plaintiff may seek relief under the NJLAD.

*Id.* at 233.

Defendants argue Plaintiff's amended claim would be futile because, under the circumstances of this case, the NJLAD does not have extraterritorial effect. They first note there is indeed a conflict between New Jersey's and Connecticut's laws against employee discrimination, including the limitations period for filing a claim thereunder. Further, they contend New Jersey's relationship with this case is attenuated at best, stressing Plaintiff is a Connecticut resident who exclusively performed sales work for Defendants in the State of Connecticut. Plaintiff, in response, argues that she may bring the NJLAD claim, regardless of any choice of law analysis, because the Broker Agreement contains a provision stating New Jersey law applies to any issues involving the Agreement's interpretation or performance.

Following the well-reasoned guidance provided by *Donovan* for applying the *Calabotta* choice-of-law framework to the pleading stage, the Court evaluates whether Plaintiff has made sufficient factual allegations in her proposed Amended Complaint to assert an NJLAD claim. As a threshold matter, the Court must determine whether the competing states' law are in conflict,

that is, whether "application of the different state laws would lead to a different outcome in the case." *Donovan*, 566 F. Supp.3d at 231. If there is no conflict, the law of the forum state applies, but if there is, the Court proceeds to analyze which state has the most significant relationship to the dispute, according to the of the Restatement (Second) of Conflicts of Laws, Sections 6, 145, and 146. *Id.*

Here, the relevant laws of New Jersey and Connecticut present a conflict. As indicated by Defendants, the laws have different limitations periods and processes for seeking redress, which would lead to different outcomes in this case. The NJLAD provides that a civil action must be filed within two years of the allegedly discriminatory occurrence and imposes no administrative exhaustion requirement, whereas the Connecticut Fair Employment Practices Act ("CFEPA") provides that an administrative claim must be filed with within 180 days of the alleged discrimination. *Compare* N.J.S.A. § 2A:14-2 *with* Conn. Gen. Stat. Ann. § 46a-82(f). Additionally, the NJLAD prohibits discrimination in refusing to "contract with" an individual, *see* N.J.S.A. § 10:5-12(l), but the CFEPA does not protect independent contractors. *See DeSouza v. EGL Eagle Glob. Logistics LP*, 596 F. Supp. 2d 456, 467 (D. Conn. 2009).

The Court, then, proceeds to the next step of the analysis. It must consider the Restatement's choice of law principles informing the most significant relationship test. Section 146 sets forth a presumption that "the local law of the state where the injury occurred" will apply unless "some other state has a more significant relationship." Restatement (Second) Conflict of Laws § 146. Section 145 identifies contacts pertinent to assessing the most significant relationship, as follows: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (d) the domicil, residence, nationality, place of incorporation and

11

place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." *Id.* § 145(2). Section 6 lists various considerations bearing on the question of which state's law should apply, including interstate comity, the interests of the parties, and the competing interests of the states, among others. *Id.* § 6.

As it pertains to this motion for leave to amend, and solely for purposes of determining whether Defendants have demonstrated Plaintiff's proposed NJLAD claim would be futile, the Court concludes Plaintiff has alleged sufficient facts to connect her alleged discriminatory termination to New Jersey and thus avail herself of the NJLAD's protections. On the one hand, the injury of any allegedly unlawful termination would have occurred in Connecticut. Plaintiff concedes she lived in Connecticut at all relevant times and operated her sales route for Defendants only in Connecticut. On the other hand, Defendants maintain their headquarters in New Jersey, and based on the facts alleged, it appears the decision to terminate Plaintiff was made in New Jersey. The proposed Amended Complaint alleges:

> Defendant's upper management employee, Ken Milstrey, who signed the letter terminating Plaintiff's employment . . . works out of Goya offices located in Jersey City, New Jersey. Defendants' contractor relations and personnel functions are based out of their Jersey City, New Jersey office, and [the] Broker Agreement clearly provides that New Jersey law governs the relationship between the parties.

(Am. Compl. ¶¶ 44-45.) Moreover, the Court notes that, according to the Complaint and proposed Amended Complaint, the relationship between Plaintiff and Defendants was created and governed by the Broker Agreement, which contains a provision stating, "This Agreement shall be governed by and construed in accordance with the laws of the State of New Jersey, both as to interpretation and performance." (Milstrey Decl. Ex. B at ¶ 27.) While this provision is not dispositive of the question of which law will apply to Plaintiff's statutory claim for relief, *see*

12

*Lupian v. Joseph Cory Holdings, LLC*, 240 F. Supp. 3d 309, 313-14 (D.N.J. 2017), the parties' meeting of the minds, as expressed in the terms of the Broker Agreement, also indicates that they may have had some expectation that New Jersey law would apply to matters relating to their professional relationship. The record, though requiring further development, contains sufficient indicia of a connection between this dispute and the State of New Jersey to permit Plaintiff to plead a claim under the NJLAD.

Other decisions analyzing the viability of a non-resident's NJLAD claim at the pleading stage are consistent with the Court's weighing of the choice of law factors to conclude that Plaintiff may plead her claim. Persuasively, in *Calabotta* the Appellate Division found that the location where a New Jersey-based employer decided to terminate an out-of-state individual might weigh in favor of the NJLAD's application, reversing dismissal of the plaintiff's termination claim and remanding for discovery on the issue. *Calabotta*, 460 N.J. Super. at 73. The Appellate Division reasoned that "[i]f Plaintiff can establish that the company's decision to fire him was made or centered in New Jersey, that would be a counterweight on the New Jersey side of the scale." *Id.* Similarly, in *Rampersad*, another court in this District denied a motion to dismiss a Florida-based employee's NJLAD claim against her New Jersey-based employer, reasoning that the claim was sufficiently pled and that "a more fully developed factual record is necessary to determine whether the *Calabotta* choice-of-law principles justify applying the NJLAD to Plaintiff's claims." *Rampersad*, 2020 WL 529212, at *4; *cf. Donovan*, 566 F. Supp. 3d. at 234-35 (finding, on a motion to dismiss, that the plaintiff failed to allege sufficient facts to avail herself of the NJLAD, where neither he nor his employer were citizens of New Jersey and their relationship was centered in New York).

Thus, on balance, the factual allegations of the proposed Amended Complaint establish a sufficient connection to New Jersey to persuade the Court that Plaintiff's motion to add an NJLAD claim does not fail on grounds of futility.[6]

None of Defendants' remaining arguments in opposition to Plaintiff's motion justify denying Plaintiff leave to amend.

First, the Court notes that Defendants' argument that amendment is futile because Plaintiff cannot meet the numerosity requirement of Federal Rule of Civil Procedure 23 is misplaced. Numerosity is a class certification requirement under Rule 23(a). Whether Plaintiff will ultimately be able to satisfy that requirement does not impact the question of whether she may state a plausible NJLAD claim, under the pleading standards of Rule 8(a) and Rule 15(a)(2).

Second, there has been no undue delay in bringing this motion. Given Plaintiff's representation that she did not learn she was subject to disparate treatment until Milstrey's testimony in the 2022 depositions, it does not appear Plaintiff failed to act on an earlier opportunity to amend. Moreover, this amendment and the introduction of a new claim to the action will not result in any unfair burden to Defendants. Although this case has been ongoing for over a year, discovery remains incomplete and, in fact, has not yet progressed to depositions.

Third, as to bad faith, Defendants contend the timing of this motion, specifically, Plaintiff's decision to wait until after the Court held an unsuccessful settlement conference and until the last day of the limitations period for the proposed NJLAD claim, suggests Plaintiff has

---

[6] However, as made clear in *Walter*, *Rampersad*, and *Donovan*, a choice of law analysis that permits a nonresident plaintiff to *assert* an NJLAD claim in a complaint does not constitute a conclusion that the plaintiff may in fact avail herself of relief under the statute, a fact-intensive choice of law question that may not be resolved until later in the action, after further factual development. As noted by *Donovan*, a court might conclude the allegations suffice at the pleading stage, but "[t]o be clear, this does not preclude a defendant from disputing these allegations at a later stage of the litigation." *Donovan*, 566 F. Supp. 3d at 233.

14

brought this motion only to exert pressure on Defendants and increase her leverage in subsequent settlement discussions. Generally, some "extrinsic evidence" to indicate a party acted in bad faith must be shown for a motion to amend to be denied on grounds of bad faith. *Adams*, 739 F.2d at 868. While the timing of this motion is not ideal, and seeking to add the NJLAD claim prior to engaging in a settlement conference would have likely made the conference more productive for all involved, the Court cannot conclude on this record that Plaintiff has acted in bad faith in seeking to amend the Complaint.

Finally, insofar as the parties have raised the possibility that Plaintiff's NJLAD claim might be time-barred, Plaintiff has made a sufficient showing that the claim would relate back to the filing date of the original Complaint by operation of Rule 15(c). In relevant part, Rule 15(c) states: "an amendment to a pleading relates back to the date of the original pleading when . . . the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Fed. R. Civ. P. 15(c)(2). Relation back requires that "the already commenced action sufficiently embraces the amended claims." *Glover v. F.D.I.C.*, 698 F.3d 139, 145 (3d Cir. 2012). The "touchstone for relation back is fair notice, because Rule 15(c) is premised on the theory that 'a party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitations were intended to provide.'" *Id.* at 146 (quoting *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 149 n. 3 (1984)). Here, Plaintiff's original Complaint arose, in part, out of her allegedly unlawful termination. The NJLAD claim, alleging the termination was discriminatory in violation of that statute, arises out of the same occurrence. Under the

circumstances, Plaintiff has demonstrated sufficient notice to Defendants of her new claim to avail herself of the relation back rule.

### III. CONCLUSION AND ORDER

For the foregoing reasons, this Court finds, in its discretion, that leave to file an amended complaint to assert an NJLAD claim is warranted under Rules 15(a)(2) and Rule 15(b)(4). Accordingly,

**IT IS** on this 14th day of November 2022,

**ORDERED** that Plaintiff's motion for leave to file an amended complaint [ECF 33] is **GRANTED**; and it is further

**ORDERED** that Plaintiff shall file her Amended Complaint within seven days of this Order.

                                                   /s/ *André M. Espinosa*
                                                   ANDRÉ M. ESPINOSA
                                                   United States Magistrate Judge