**Anthony L. Marchetti, Jr., Esq. (AM4302)**
**MARCHETTI LAW, P.C.**
**900 N. Kings Hwy., Suite 306**
**Cherry Hill, NJ 08034**
**(856) 824-1001 fax: (856) 414-1806**
**amarchetti@marchettilawfirm.com**

**Ravi Sattiraju, Esq.**
**SATTIRAJU & THARNEY, LLP**
**50 Millstone Road**
**Building 300, Suite 202**
**East Windsor, NJ 08520**
**(609) 469-2110**
**rsattiraju@s-tlawfirm.com**

**Harold I. Lichten, Esq. (pro hac vice anticipated)**
**Benjamin J. Weber, Esq. (pro hac vice anticipated)**
**LICHTEN & LISS-RIORDAN, P.C.**
**729 Boylston St #2000**
**Boston, MA 02114**
**(617) 994-5800 fax: (617) 994-5801**
**hlichten@llrlaw.com; bjweber@llrlaw.com**

**Attorneys for Plaintiffs**

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **MADELINE HERRERA,** individually and on behalf of all others similarly situated, | C.A. NO. 2:21-CV-11628-ES-AME |
| Plaintiffs, | Class Action |
| v. | FIRST AMENDED COMPLAINT |
| **GOYA FOODS, INC.,** and **A.N.E. SERVICES, INC.** | |
| Defendants. | |

1

Plaintiff Madeline Herrera, by way of this Complaint against Defendants, alleges as follows:

## INTRODUCTION

1. Plaintiff worked for Defendants as a sales representative in Connecticut and was misclassified by Defendants as an independent contractor. Pursuant to Connecticut law, Plaintiff and Defendants' other sales representatives are employees of Defendants and, as a result of their misclassification, Defendants' practice of making unlawful deductions from the sales representatives compensation violates Connecticut's wage payment laws, C.G.S. § 31-58 *et seq.*

2. Plaintiff brings this lawsuit on behalf of herself and all other current and former sales representatives who worked for Defendants Goya Foods, Inc. and A.N.E. Services, Inc. in New Jersey as a class action pursuant to Federal Rule of Civil Procedure 23, asserting claims for violations of Connecticut's wage payment laws, C.G.S. § 31-58 *et seq.* and violations of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-21 *et seq.*

## PARTIES

3. Plaintiff Madeline Herrera is an adult resident of Elizabeth, Connecticut. From approximately 2010 to June 2020, Herrera worked full-time as a "Sales Representative" (or "Sales Broker") servicing Goya's customers in a geographic area set by Goya in Connecticut.

4. Defendant, Goya Foods, is a Delaware corporation with its principal office in Jersey City, Hudson County, New Jersey.

5. Defendant, A.N.E. Services, Inc. is a Delaware corporation, LLC, business entity or unincorporated association that is unregistered in the State of New Jersey despite having its principal office in Goya's Jersey City, New Jersey headquarters. A.N.E. Services, Inc. is a wholly controlled subsidiary of Goya and exists for the sole purpose of providing another corporate intermediary in an effort by Goya to attempt to avoid the requirements of state and federal wage and worker protection laws.

6. There exists, and at all times mentioned herein existed, a unity of interest between Goya and A.N.E. such that any individuality or separateness between them is fictional and A.N.E is the agent/alter ego of Goya.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over each of the parties in this state action pursuant to the New Jersey Constitution, Art. VI, Sec. III, par. 2.

8. This Court has personal jurisdiction over the parties because both Defendants have places of business in New Jersey and a forum selection clause included in Plaintiff's contract with Defendants states that all disputes shall be subject to the exclusive jurisdiction of the federal or state courts of the state of New Jersey.

9. Venue is further appropriate pursuant to New Jersey Superior Court R. 4:3-2 given that Defendants perform regular business in Essex County, New Jersey.

## STATEMENT OF FACTS

10. Defendant Goya, directly and through its subsidiary/alter ego A.N.E., is a national company employing individual sales representatives to sell Goya food products to retailers and other Goya customers throughout the United States.

11. During the time relevant to this action, Goya/A.N.E. retained what is believed to be more than 300 "Sales Representatives" or "Sales Brokers," for the purpose of selling its products and wares to various businesses and facilities. Approximately a dozen of these individuals perform services at any given time, on behalf of Defendants in Connecticut.

12. Plaintiff and the class members have signed versions of a contract with Defendants that are called a "Broker Agreement" and which contains various non-negotiable terms imposed upon sales representatives by the Defendants.

13. The Broker Agreement into which Plaintiff entered stated, in part:

> Choice of Law and Jurisdiction: This Agreement shall be governed by and construed in accordance with the laws of the State of New Jersey both as to interpretation and performance, without regard to such state's conflict-of-law rules, and any dispute arising under this Agreement or relating to the relationship created by this Agreement shall be subject to the exclusive jurisdiction of the federal and state courts of the state of New Jersey.

14. As a Sales Broker, Plaintiff and other sales representatives are responsible for servicing Goya's customers, the various super-markets and retailers that purchase Goya's products wholesale directly from Goya and then sell those products to the public. This work includes traveling to the stores and communicating with Goya's customers regarding their product orders.

15. Plaintiff and other sales representatives are work full-time performing these tasks for Defendants.

16. Plaintiff and other sales representatives are prohibited from providing similar services to any entity other than Defendants.

17. Although Goya purports to classify all sales representatives as independent contractors, under the Connecticut employment relationship test, Plaintiff should have been classified as an employees of Defendants and provided the protections of the Connecticut's wage payment laws.

18. Defendants exercise substantial control over Plaintiff and other sales representatives' work.

19. For example, Defendants sets all prices paid by customers and all commission rates paid to them.

20. Defendants also employ individuals who are responsible for supervising the sales representatives' work, including riding along with the sales representatives while they perform their work and checking on the sales

representatives' job performance. This supervision includes email and telephone communications instructing Plaintiff and other sales representatives, about the manner in which they must perform their work and monitoring sales representatives' performance in the field.

21. Defendants also required Plaintiff and other sales representatives to attend periodic meetings, for which they received no compensation and at which Defendants provided Plaintiff and other sales representatives with instructions regarding how to perform their work.

22. Defendants regularly required Plaintiff and other sales representatives to submit reports of every detail of their work activity.

23. In addition, Defendants require male sales representatives to wear a suit and tie.

24. Plaintiff and other sales representatives do not have authority to reject sales or customers.

25. Plaintiff and other sales representatives are required to form business entities as a condition of working for Defendants.

26. Plaintiff and other sales representatives were required to increase their sales by three percent each year.

27. Goya retained the power to terminate Plaintiff and other sales representatives are if it was dissatisfied with their work.

28. Moreover, Plaintiff and other sales representatives' work is integral to Goya's business, as they are directly responsible for servicing Goya's customers and without their work, Goya would have no means to communicate with its customers to arrange product orders.

29. Indeed, because Plaintiff and other sales representatives' work is integral to Defendants' business, Plaintiff and other sales representatives are provided two weeks off for vacation each year and Defendants pay for the services of a replacement to fill in as a temporary sales representative for those two weeks. Plaintiff and other sales representatives need Goya's approval to schedule the vacation.

30. Plaintiff and the other sales representatives perform work within Defendants places of business.  Defendants assign the sales representatives to specific geographical areas. Each workday, the sales representatives perform work on routes approved by Defendants within their assigned areas. In addition, Defendants routinely designate the time the sales representatives are required to arrive at stores.

31. Plaintiff and the other sales representatives were not engaged in independent businesses and as in fact economically reliant on Defendants for their livelihood, as they were prohibited from performing their sales representative services for any other company, worked full-time for Defendants without any

additional time to engage in other economic pursuits, and had no control over the prices or commissions that determined her earnings.

32. Indeed, when Plaintiff was terminated by Defendants in June of 2020, she did not have any work.

33. Defendants compensated Plaintiff and the other sales representatives for their work based upon a commission structure. Earned commissions constituted Plaintiff and the other sales representatives' wages.

34. Defendants made deductions from the wages of Plaintiff and the other sales representatives that are illegal under Connecticut law. These include deductions from earned commissions for Worker's Compensation insurance.

35. In addition, Defendants made deductions from Plaintiff and the other sales representatives' earned commissions for a "reserve account," which Goya uses to pay itself if one of the customers in sales representatives territory does not timely pay its invoice, and.

36. Furthermore, in the event that customer does not timely pay its invoice, Defendants retained the power to make additional deductions from Plaintiff and the other sales representatives' earned commissions, and not from the "reserve account," at Defendants' discretion.

37. The deductions made by Defendants from Plaintiff and the other sales representatives unlawfully shift the costs of doing business (including insuring its employees and protecting against non-payment of customers) to its employees.

38. Defendants also require Plaintiff and the other sales representatives to pay for the purchase or lease of a vehicle, as well as for its maintenance and upkeep of the vehicle, which is necessary to perform their work. Other work-related costs required to be paid by Plaintiff and the other sales representatives include fuel, oil, tires, repairs, taxes, insurance coverage, licenses, vehicle registration fees and tolls.

39. On or about January 26, 2020, Plaintiff took leave from her position with Defendants, in order to undergo medical treatment for Stage 4 endometriosis. She provided Defendants with medical documentation. She underwent physical and occupational therapy and home treatment.

40. While on leave, Defendants deducted approximately $670 to $770 from Plaintiff's commission earnings each week (to pay for the services of a replacement to fill in as a temporary sales representative).

41. Defendants located photos of Plaintiff on vacation via social media and questioned Plaintiff regarding these photos, accusing her of requesting time off for a vacation overseas, rather than for medical reasons. Plaintiff clarified the photos were from the previous year and that she was still undergoing medical treatment.

42. Nevertheless, on or about June 12, 2020, Defendants terminated Plaintiff. Defendants cited the "Best Efforts" provision and ¶ 19 of the Broker Agreement, which provides for termination of the contract upon the occurrence of a non-curable breach; Defendants stated that Plaintiff had committed a non-curable breach of this provision by taking leave to go on vacation overseas and for providing false and dishonest information.

43. Plaintiff was not previously issued a verbal counseling or a notice of curable breach as required in her Broker Agreement.

44. Defendants' upper management employee, Ken Milstrey, who signed the letter terminating Plaintiff's employment, testified under oath in a February 2022 deposition that unless there was something extraordinary like theft, "the only time a non-curable breach would be issued would be following a curable breach." Mr. Milstrey further testified in an April 2022 deposition under Rule 30(b)(6) that his process would be to confer with a Broker before issuing a curable breach notice or non-curable breach notice.

45. Mr. Milstrey works out of Goya offices located in Jersey City, New Jersey. Defendants' contractor relations and personnel functions are based out of their Jersey City, New Jersey office, and Broker Agreement clearly provides that New Jersey law governs the relationship between the parties.

46. Plaintiff was an employee of Goya as defined by the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 *et seq.* As such, Defendants were legally required to provide reasonable accommodations for Plaintiff's disabilities and engage in an interactive process with Plaintiff about receiving reasonable accommodations. Moreover, Defendants were legally prohibited from discriminating against Plaintiff based on her disabilities and/or retaliating against Plaintiff for requiring reasonable accommodations, including, but not limited to, leave for her disabilities. Defendants' treatment of Plaintiff violated all of the aforementioned obligations.

47. Moreover, Defendants' stated reason for terminating of Plaintiff's employment was a pretext for disability discrimination and retaliation given that the stated reason for Plaintiff's termination was demonstrably false, and Defendants deviated from their standard procedure of first issuing a notice of curable breach prior to issuing a notice of noncurable breach.

48. Even if Plaintiff were not an "employee" of Goya, Goya's actions would still violate Section 12(l) of the LAD, which prohibits discrimination with respect to contractual relations.

## CLASS ACTION ALLEGATIONS

49. Plaintiff brings this class action on behalf of herself and other similarly situated sales representatives who were classified by Defendants as independent

contractors Specifically, Plaintiff brings this action as a class action on behalf of all persons who worked, on a full time basis, for Defendants in the State of Connecticut during the Class period, as sales representatives and signed a Broker Agreement, directly or on behalf of a business entity (the "Proposed Class").

50. Upon information and belief, the number of members of the Plaintiff Class exceeds 40 during the Class Period.

51. The Plaintiff Class is so numerous that their individual joinder into a single action is impracticable. Although the exact number of Class Members cannot be properly determined without further discovery, the number and identity of the Class Members can easily be ascertained from Defendants' records.

52. Each member of the Proposed Class signed materially identical Broker Agreements.

53. Under Connecticut law, every Goya sales representative in Connecticut is, as a matter of law, a Goya employee.

54. The Defendants' actions have inflicted the same types of harm upon every member of the Proposed Class.

55. There are questions of law and fact that affect and are common to all Members of the Proposed Class.

56. Common legal and factual issues predominate over any questions affecting only individual members of the Proposed Class. Among the common questions of law and fact are the following:

    a.    Whether the sales representatives are Defendants' employees;

    b.    Whether Defendants unlawfully forced Plaintiffs to pay for business expenses that rightfully should have been paid for by their employer;

    c.    Whether Defendants, by making unlawful deductions from the pay of sales representatives, violated the Connecticut's wage payment laws;

57. The claims of the named representative Plaintiff are typical of the claims of other members of the Proposed Class.

58. Plaintiff is committed to vigorously prosecuting this action on behalf of all Members of the Proposed Class who have suffered losses as a result of Defendants' actions described herein.

59. Plaintiff has retained qualified counsel, experienced in class action practice, to represent them in this matter.

60. A class action is the only realistic method available for the fair and efficient adjudication of this controversy. Because the damages suffered by individual Class Members may be relatively small in comparison with the expense and burden of individual litigation, it is impracticable for members of the Class to seek redress individually for the wrongful conduct herein alleged.

61. Were each individual member required to bring a separate lawsuit, the resulting multiplicity of proceedings would cause undue hardship and expense for the litigants and the Court. The prosecution of separate actions would also create the risk of inconsistent rulings, which may be dispositive of the interest of Class Members who are not parties to the adjudication and/or may substantially impede Class Members' ability to protect their interests, and therefore would be contrary to the interest of justice and equity.

## COUNT I
## CONNECTICUT MINIMUM WAGE ACT
### (UNLAWFUL WITHHOLDING AND DEDUCTIONS FROM WAGES)

62. Plaintiffs repeat and reallege each and every allegation above as if restated herein verbatim.

63. Plaintiff and other putative class members are employees of Defendants, and therefore entitled to the protections of Connecticut wage payment laws, C.G.S. § 31-58 *et seq.*

64. Defendants have paid Plaintiff and other sales representatives compensation for their services that are wages pursuant to C.G.S. § 31-73. This is true even where Defendants paid Plaintiff through a business entity that Plaintiff and the sales representatives was required to form to work for Defendants.

65. Defendants made deductions from the compensation they paid to Plaintiff and other sales representatives for worker's compensation, for a "reserve

account," and for failure of Goya customers to pay the full amount for products delivered.

66. Defendants' requirement that Plaintiff and the other sales representatives pay for their own expenses, such as mileage, operated as a further deduction form wages.

67. The deductions made by Defendants from their sales representatives' compensation violate the C.G.S. § 31-71e, which prohibits employers from withholding or diverting any portion of an employee's wages unless the employer obtains written authorization from the employee for the deductions on a form approved by the commissioner of the Department of Labor.

68. As a direct and proximate result of Defendants' illegal conduct as set forth above, Plaintiff and putative class members have suffered damages, including but not limited to lost wages. This claim is brought pursuant to Conn. Gen. Stat. § 31-72, which entitles Plaintiff and putative class members to recover twice the full amount of such wages, with costs and reasonable attorneys' fees.

## COUNT II
## BREACH OF CONTRACT

69. Plaintiff repeats and realleges each and every allegation above as if restated herein verbatim.

70. Defendants breached its contract of employment with Plaintiff, specifically ¶ 19 and its "Best Efforts" provision entered into with Plaintiff, when it

terminated her despite her performance being in accord with the "Best Efforts", as she provided a legitimate explanation (her medical leave) for not providing services for a duration of time and therefore did not commit a non-curable breach.

71. Defendants conduct in unilaterally terminating Plaintiff's contract also violates the implied covenant of good faith and fair dealing because Defendants acted in bad faith and/or reckless disregard of the truth in order to terminate the Agreement and deprive Plaintiff of its benefits. Defendants accused Plaintiff of lying about her medical leave without adequate cause and then continued to use its own accusations as the sole basis for a non-curable breach even after Plaintiff clarified that she in fact was on medical leave (and not on vacation).

## COUNT III

### (VIOLATION OF THE NEW JERSEY LAW AGAINST DISCRIMINATION)

72. Plaintiff repeats and reiterates each of the above allegations of the Complaint as though set forth herein verbatim.

73. Under the express terms of her Broker Agreement, Plaintiff is protected by the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 *et seq.*

74. Defendants' actions against Plaintiff constitute violations of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 *et seq.*

75. Defendants' violations include, but are not limited to, breaches of the LAD's prohibitions of unlawful discrimination, failure to accommodate, failure to

engage in the interactive process, unlawful reprisals and retaliation, and aiding/abetting violations of the LAD.

76. Because Section (l) of the LAD prohibits discrimination in contracting, Defendants' actions violate the Act regardless of whether Plaintiff is deemed an employee under the LAD.

77. The Defendants' conduct in violating the LAD was especially egregious, malicious and/or engaged in with willful disregard of Plaintiff's rights and committed by members of the Defendants' upper management.

78. As a result of Defendants' unlawful conduct, Plaintiff has endured significant damages including, but not limited to, physical and bodily injuries, severe emotional distress, humiliation, embarrassment, personal hardship, career and social disruption, psychological and emotional harm, economic losses, and other such damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff asks this honorable Court to enter the following relief:

a. An Order certifying the Proposed Class defined above, for the purposes of adjudicating Count I;

b. An award of damages for all unpaid wages, expenditures, costs, deductions, benefits, or other losses resulting from Defendants' misclassification, as described above;

  c. An award of all legally available damages under the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 *et seq.*

  d. An award of damages permitted by common law, including common law punitive damages, for all counts;

  e. Attorneys' fees and costs; and

  f. Such other legal and equitable relief as the Court deems just and proper.

Dated: November 15, 2022

           **MARCHETTI LAW, P.C.**
           Attorneys for Plaintiffs

           /s/ Anthony L Marchetti, Jr. AM4302
           ANTHONY L. MARCHETTI, JR.

           **SATTIRAJU & THARNEY, LLP**
           Attorneys for Plaintiffs

           RAVI SATTIRAJU, ESQ.

           **LICHTEN LISS-RIORDAN, P.C.**
           Attorneys for Plaintiffs

           HAROLD L. LICHTEN, ESQ.
           BENJAMIN J. WEBER, ESQ.
           (pro hac vice anticipated)

## JURY TRIAL DEMAND

Plaintiffs demand a trial by jury as to all issues so triable.

**MARCHETTI LAW, P.C.**
Attorneys for Plaintiffs


/s Anthony L Marchetti, Jr. AM4302
ANTHONY L. MARCHETTI, JR.

## DESIGNATION OF TRIAL COUNSEL

Anthony L. Marchetti, Jr., Ravi Sattiraju and Harold Lichten are hereby designated as trial attorney in the above captioned litigation on behalf of the Plaintiffs.

**MARCHETTI LAW, P.C.**
Attorneys for Plaintiffs


/s/ Anthony L Marchetti, Jr. AM4302
ANTHONY L. MARCHETTI, JR.


**SATTIRAJU & THARNEY, LLP**
Attorneys for Plaintiffs
RAVI SATTIRAJU, ESQ.

**LICHTEN LISS-RIORDAN, P.C.**
Attorneys for Plaintiffs

HAROLD L. LICHTEN, ESQ.
BENJAMIN J. WEBER, ESQ.
(pro hac vice anticipated)